# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3706EA

_____

| | | |
|---|---|---|
| Sherry L. Moring, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Arkansas Department of Correction, | * | |
| | * | |
| Defendant, | * | On Appeal from the United |
| | * | States District Court |
| Gary Smith, individually and in his | * | for the Eastern District |
| official capacity, | * | of Arkansas. |
| | * | |
| Defendant/Appellant, | * | |
| | * | |
| Jane Manning, individually and in her | * | |
| official capacity; and Larry Norris, | * | |
| individually and in his official capacity, | * | |
| | * | |
| Defendants. | * | |

_____

Submitted:  December 14, 2000
Filed:  March 15, 2001

_____

Before WOLLMAN, Chief Judge, RICHARD S. ARNOLD and HANSEN, Circuit
    Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

Sherry L. Moring filed this 42 U.S.C. § 1983 civil rights action against Gary Smith, her supervisor, in his individual capacity. Ms. Moring alleged that Mr. Smith violated her Fourteenth Amendment right to equal protection of the laws by sexually harassing her. A jury returned a verdict for Ms. Moring. Mr. Smith appeals the District Court's[1] denial of his motion for judgment as a matter of law or, in the alternative, a new trial. We affirm.

I.

We consider the evidence produced at trial in the light most favorable to Ms. Moring. See Ogden v. Wax Works, Inc., 214 F.3d 999, 1002 (8th Cir. 2000). Ms. Moring and Mr. Smith worked for the Arkansas Department of Correction. Ms. Moring was the Central Drug Testing Coordinator. Mr. Smith was her immediate supervisor. Not long after Ms. Moring got the new position, she and Mr. Smith traveled to Calico Rock, Arkansas, to conduct drug evaluations on unit employees. During the drive, Mr. Smith engaged in conversation about his drinking, using drugs, and womanizing in college. He also spoke of his desire to have children outside of marriage and expressed approval of extra-marital affairs. Mr. Smith was married.

When Mr. Smith and Ms. Moring arrived at Calico Rock, they checked into adjoining hotel rooms. During dinner Mr. Smith told Ms. Moring that several people probably had keys to their rooms, that their rooms might have been ransacked, that someone might have placed dead animals outside of their hotel rooms, and that someone might slash the tires on their vehicle. Mr. Smith told Ms. Moring that he might go back to Pine Bluff that night and return for her in the morning. Ms. Moring told Mr. Smith that if he returned to Pine Bluff she would also like to return.

---

[1]The Hon. Susan Webber Wright, Chief Judge, United States District Court for the Eastern District of Arkansas.

At approximately 10:15 p.m. Mr. Smith knocked on the door adjoining his and Ms. Moring's rooms and requested the day's testing results. Ms. Moring opened the door to find Mr. Smith wearing only his boxer shorts. She immediately closed the door. A few minutes later a fully dressed Mr. Smith barged into Ms. Moring's room and proceeded to make a telephone call. He had a drink in his hand and offered one to Ms. Moring. She refused, which seemed to agitate Mr. Smith. Mr. Smith repeatedly told Ms. Moring that he was not her supervisor, and that they were equals. He told her that she "owed" him, and that he did not like her. Ms. Moring testified that she understood Mr. Smith to mean she owed him a sexual favor for getting her the position. Mr. Smith also stated that no one at the ADC liked her, that no one wanted her to have her new position, and that he was responsible for her having the position. Mr. Smith also stated that no one would believe anything she reported. Ms. Moring testified that she smelled alcohol on Mr. Smith's breath, and that she was frightened, because his behavior was hostile and abusive.

Even though Ms. Moring repeatedly asked Mr. Smith to leave, he stayed in her room until 2:30 a.m. Several times Mr. Smith stood in the doorway of the two adjoining rooms to refill his drink. After four hours the evening ended with Mr. Smith sitting on Ms. Moring's bed, placing his hand on her thigh, and leaning in as if to kiss her. Ms. Moring pushed Mr. Smith back and leaned to the side to avoid him. Ms. Moring told Mr. Smith that his actions were not funny, and that he had offended her. When Mr. Smith left Ms. Moring's room, she locked the adjoining door and pushed a love seat in front of it.

The next day, while working at the Calico Rock unit, Ms. Moring called the ADC and reported the incident. Separate arrangements were made for Ms. Moring's transportation back to Pine Bluff. Ms. Moring was later removed from Mr. Smith's supervision.

Ms. Moring changed after the incident in Calico Rock. She lost the enjoyment she previously experienced in her new position. She often became upset at work and in her personal life. She avoided Mr. Smith and other ADC employees.

Ms. Moring filed suit pursuant to 42 U.S.C. § 1983 against Mr. Smith, alleging sexual harassment. The jury returned a plaintiff's verdict and awarded Ms. Moring $50,000 in compensatory damages and $20,000 in punitive damages. Mr. Smith filed a motion for judgment as a matter of law or, in the alternative, a new trial. The District Court denied the motion, and Mr. Smith appeals.

II.

Mr. Smith asserts that the District Court erred in denying his motion, because there was insufficient evidence to support the jury's verdict. Mr. Smith argues Ms. Moring failed as a matter of law to prove that his conduct was sexual harassment, that the conduct was based on her gender, that the conduct was unwelcome, or that it was sufficiently severe or pervasive to alter the terms and conditions of her work environment. We disagree.

A district court's denial of a motion for judgment as a matter of law will be affirmed "unless, after reviewing de novo all the evidence in the light most favorable to the non-moving party, we determine that no reasonable juror could have returned a verdict in the non-moving party's favor." Goff v. Bise, 173 F.3d 1068, 1073 (8th Cir. 1999). The non-movant receives the benefit of all reasonable inferences. Heating & Air Specialists, Inc. v. Jones, 180 F.3d 923, 932 (8th Cir. 1999). Moreover, this Court's "review of a jury verdict is extremely deferential." Morse v. Southern Union Co., 174 F.3d 917, 922 (8th Cir. 1999). In order for Mr. Smith "to prevail on [his] motion for JAML, [he] faces the difficult task of demonstrating all the evidence points in [his] direction and is susceptible of no reasonable interpretation sustaining [Ms. Moring's] position." Ogden, 214 F.3d at 1006. Furthermore, "[a] new trial is appropriate if the verdict is against the weight of the evidence and if allowing it to stand

-4-

would result in a miscarriage of justice." Van Steenburgh v. The Rival Company, 171 F.3d 1155, 1160 (8th Cir. 1999). We review the District Court's denial of a motion for a new trial for abuse of discretion. Ogden, 214 F.3d at 1010 (citing Bevan v. Honeywell, Inc., 118 F.3d 603, 612 (8th Cir.1997)).

Intentional sexual harassment by persons acting under color of state law violates the Fourteenth Amendment and is actionable under § 1983. Jones v. Clinton, 990 F. Supp. 657, 668 (E.D. Ark. 1998) (citing Beardsley v. Webb, 30 F.3d 524, 529 (4th Cir. 1994)). To establish a cause of action for hostile-work-environment sexual harassment a plaintiff must prove (1) that she "belongs to a protected group," (2) that she has been sexually harassed by the defendant, (3) that the defendant's conduct was based on the plaintiff's gender, (4) that the defendant's conduct was unwelcome, and (5) "that the harassment affected a term, condition, or privilege of employment." Scusa v. Nestle USA Co., 181 F.3d 958, 964 (8th Cir. 1999). "To be actionable, harassment must be both objectively and subjectively offensive, such that a reasonable person would consider it to be hostile or abusive . . .." Breeding v. Arthur J. Gallagher and Co., 164 F.3d 1151, 1158 (8th Cir. 1999). "Harassment affects a term, condition, or privilege of employment if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " Howard v. Burns Bros., Inc., 149 F.3d 835, 840 (8th Cir. 1998) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993), and Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67 (1986)). "Relevant factors for determining whether conduct rises to the level of abusiveness include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " Id. (quoting Harris, 149 F.3d at 23).

Here there was sufficient evidence for a reasonable jury to find that Mr. Smith's conduct was sexual harassment. Mr. Smith engaged in improper conduct. There was evidence that Ms. Moring was offended by his conduct. Whether that conduct rose to the level of sexual harassment is usually a factual determination for the jury. Howard,

149 F.3d at 840 ("Once there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury.") We can not say as a matter of law that Mr. Smith's conduct was not sexual harassment. See Breeding, 164 F.3d at 1159 (declining to hold supervisor's conduct involving fondling his genitals and using lewd and sexually inappropriate language could not, as a matter of law, be actionable sexual harassment); Rorie v. United Parcel Serv. Inc., 151 F.3d 757, 762 (8th Cir. 1998).

What is more, there was sufficient evidence to support a reasonable jury finding that Mr. Smith's conduct was based on Ms. Moring's gender. "[T]he key inquiry is whether 'members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.' " Quick v. Donaldson Co., 90 F.3d 1372, 1378 (8th Cir. 1996) (quoting Harris, 510 U.S. at 25 (Ginsburg, J., concurring). Here, Mr. Smith engaged in conversation of a sexual nature on the drive to Calico Rock, he appeared barely clothed at the plaintiff's door, he sat on her bed, he touched her thigh and attempted to kiss her. A reasonable jury could find that this conduct would not have been directed at a male employee. Likewise, there was evidence that the conduct was uninvited. Ms. Moring asked Mr. Smith to leave her room several times, and she resisted his advance. She also testified that she was afraid and considered Mr. Smith's behavior abusive and threatening.

Furthermore, there was sufficient evidence to allow a reasonable jury to find that the work environment was objectively hostile and abusive. Whether a work environment is objectively hostile or abusive is a fact-intensive inquiry. Bales v. Wal-Mart Stores, Inc., 143 F.3d 1103, 1109 (8th Cir. 1998). Here, there was testimony that after the incident Ms. Moring often spoke of the incident and often cried at work. She avoided Mr. Smith and was under stress at her job. In addition, other ADC employees testified that Ms. Moring was visibly upset over the incident. Thus, we can not, as a matter of law, hold that Mr. Smith's behavior did not objectively create a hostile or abusive work environment.

Mr. Smith also argues that the behavior was not sufficiently severe to alter the terms and conditions of employment, because it was one isolated incident. However, we are unaware of any rule of law holding that a single incident can never be sufficiently severe to be hostile-work-environment sexual harassment. Here, Mr. Smith was Ms. Moring's supervisor. They were on an overnight business trip. He suggested that she might not be safe in her hotel room, or that they might be the object of animosity from the people at Calico Rock. He knocked on Ms. Moring's door clothed only in boxer shorts. After entering her room he repeatedly insisted that Ms. Moring "owed" him for her job. He would not leave the hotel room, although Ms. Moring repeatedly asked him to leave. Finally, he sat on her bed, touched her thigh and leaned in as if to kiss her. This was sufficient evidence to support a reasonable jury's finding that the incident at the hotel was severe enough to alter the terms and conditions of Ms. Moring's employment.

## III.

Thus, considering the evidence in the light most favorable to Ms. Moring, and giving her the benefit of all reasonable inferences, we hold that the District Court did not err in denying the motion for judgment as a matter of law. We also hold that the District Court did not abuse its discretion in denying a new trial.

Accordingly, the judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-